**STATE of Missouri, Plaintiff–Respondent,**

v.

**Gary W. GAGE, Defendant–Appellant.**

**No. 55072.**

Missouri Court of Appeals, Eastern District, Division One.

Feb. 14, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 3, 1989.

Application to Transfer Denied May 16, 1989.

Robert G. Duncan, Kansas City, for defendant-appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

A jury convicted defendant, pursuant to § 195.020, RSMo 1986, of possession of cocaine, Count I, and possession of more than 35 grams of marijuana, Count II. The jury assessed punishments of ten years for Count I and five years for Count II. § 195.200, RSMo Supp.1988. The court sentenced defendant in accordance with the jury's assessments. He appeals; we affirm.

On appeal defendant contends that the trial court erred in denying his motion to suppress and admitting into evidence items, including marijuana and cocaine, seized from his vehicle because the items are the "fruits of an unreasonable, unlawful and unconstitutional detention and arrest" and were not otherwise lawfully searched for and seized.

The state's evidence showed the following regarding the seizures: At 8:35 on the evening of January 17, 1987, a state highway patrol officer was patrolling Highway 70 in Montgomery County. It was cold, windy and snowing heavily. The roads were slick. He observed a wrecker preparing to extricate defendant's enclosed jeep from a ditch between Interstate 70 and the south service road near Danville. He stopped to offer assistance and to warn traffic. The officer and defendant first spoke after the jeep was pulled onto the service road. Defendant, who had been in his jeep until then, met the officer near the jeep and they talked about his accident. The officer described defendant as being "wild" at this time and elaborated, "He seemed very excited, nervous and a little bit agitated at my being there. Tears were running down his face. Mucous from his nose was coming down over his mouth area." While they spoke, defendant moved about "like he was nervous ... [and] [h]e seemed to be generally walking away from [the jeep]." The officer did not smell liquor on defendant's breath, but "thought there was a possibility of either [alcohol] intoxication or drug intoxication...." After they spoke, defendant got into his jeep. The officer then walked over to the jeep because he "wasn't satisfied as to [defen-

dant's] ability to drive, especially considering the weather conditions." He "wanted to make sure [of whether defendant was intoxicated] before [defendant] left so he wouldn't have an accident or harm himself or someone else." He was also concerned for his own risk of liability: "Since I face a certain amount of liability if I don't recognize signs of drug intoxication or alcohol intoxication and I turn someone loose and they have an accident, I am partially at fault because I did not recognize the signs. I was not at all convinced that he was able to drive at that time." He had his flashlight on as he walked to the jeep. When he reached the driver's door of the jeep he motioned that he wished to speak to defendant again. Defendant opened his window an inch or so to speak, but kept the door closed. They tried to converse, but the officer could not hear defendant and motioned for him to roll the window down further or open his door. Defendant opened the door about a foot and stared at the officer. The officer, who was standing near the opening, shined his flashlight into the jeep and saw a brown pill bottle on the floorboard of the driver's side. The bottle was lying on its side, open. The officer saw a lump of white substance and a screen in or near the bottle. He looked at defendant and asked, "What's that?" Defendant did not respond, but became very agitated. The officer then picked up the bottle, and defendant, in a raised voice, told the officer to "take it all." Defendant began throwing paper bags at the officer. The officer took defendant to his patrol car where he read defendant his Miranda rights and informed him he was under arrest for possession of cocaine. After waiving his rights, defendant told the officer, "You hit big," and clarified his statement by saying, "You caught me with my stash." He then told the officer he would find what he was looking for "in a brown paper bag located in [the back of his jeep]." After assistance arrived, the officer searched the back of the jeep and found "a bag of white powder and another bag containing a green leafy substance...." He seized these items. They were later identified by laboratory analysis to be cocaine

and marijuana. He thoroughly searched the interior of the jeep and two unlocked suitcases he found in the back of the jeep. He seized the suitcases which contained bags of white powder; the powder was later identified as cocaine. He also seized items of drug paraphernalia strewn about the vehicle: screens, glass tubes, etc., and a brown leather pouch containing $2,020.00 in twenty dollar bills.

 A police officer may temporarily stop and detain persons for investigatory purposes without making an arrest and without probable cause if the officer has a reasonable suspicion that criminal activity is afoot. *State v. Lowrance*, 619 S.W.2d 354, 355 (Mo.App.1981). Reasonable suspicion is measured by whether a person of reasonable caution would believe the action taken was appropriate in light of the facts known to the officer at the time. *Id.* (*citing State v. Lasley*, 583 S.W.2d 511, 518 (Mo. banc 1979)).

 Here defendant had had an accident and appeared "wild" and possibly intoxicated when the officer first spoke to him. In light of these facts, the officer was warranted in detaining defendant to further investigate defendant's capability to drive safely.

 The pill bottle containing cocaine and screens was in plain view and the officer was lawfully in a position to see it and its contents; all were therefore subject to seizure and admissible at trial. *Lowrance*, 619 S.W.2d at 356. The fact that a flashlight was used to illuminate the items which would have been visible by sunlight during the day is irrelevant. *Id.* Some of the drug paraphernalia was thrown at the officer and was not obtained as the result of any search or seizure; it was obtained after the officer had probable cause to arrest defendant. The other evidence at trial was properly seized as the result of a lawful search after defendant's arrest and at a time when the officer had probable cause to believe the jeep contained controlled substances subject to seizure. *Id.*

Defendant's point is without merit.

JUDGMENT AFFIRMED.

CRANDALL, P.J., and CRIST, J., concur.