**STATE of Missouri, Respondent,**

v.

**Michael H. MORR, Appellant.**

**No. WD 43282.**

Missouri Court of Appeals,
Western District.

June 11, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1991.

Michael B. Watkins, Chillicothe, Roger L. Cossack, Santa Monica, Cal., for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BERREY, P.J., and KENNEDY and GAITAN, JJ.

KENNEDY, Judge.

Defendant was convicted upon trial to the court of the misdemeanor possession of 35 grams or less of marijuana and of the felony of possession of methamphetamine. Defendant's sole point on appeal is the admissibility of the fruits of a search by the arresting officers of his automobile and of a locked briefcase found therein. He

charges error in the trial court's overruling of his motion to suppress the same.

At 6:10 p.m. on June 11, 1987, highway patrol trooper McCracken stopped defendant, who was driving north on Highway I–35 in Daviess County in a silver colored Pontiac Trans Am with an Arizona license tag. Trooper McCracken's reason for stopping defendant was that the side windows of defendant's car were tinted in violation of Missouri law.

When defendant's car was stopped on the shoulder of the highway, with McCracken's patrol car stopped behind him, McCracken walked up to defendant's car and asked him to step back to the patrol car. Defendant did so. McCracken looked at defendant's driver's license, explained to him why he had stopped him, and wrote a citation charging him with the tinted windows violation.

McCracken then asked defendant "if he had any guns or knives or drugs or anything" in the vehicle. Defendant answered that he did not. McCracken asked defendant "if he cared if I looked around inside his vehicle." Defendant assented. As McCracken and defendant approached defendant's car on the passenger side, defendant asked McCracken if he could reach in and get his cigarettes before McCracken looked. McCracken told him he could. Reaching in the open door on the passenger side of his automobile, across the passenger seat, defendant picked up an object off the console between the seats. It was a hand rolled cigarette. When McCracken asked defendant what it was, defendant answered it was a "joint." (A "joint," McCracken explained in his testimony, is a common name for a marijuana cigarette.) McCracken examined the object and determined that it was indeed a marijuana cigarette.

At this point McCracken placed defendant under arrest for marijuana possession, and advised him of his Miranda rights. Soon Trooper Sheldon Lyon arrived on the scene, in response to a call by McCracken for assistance. A search of defendant's person produced a small vial containing cocaine. The search of defendant's car

proceeded. It disclosed some zigzag rolling papers, commonly used for rolling marijuana cigarettes, and some hemostats. Hemostats are surgeons' tools but are used by marijuana smokers to hold their joints for smoking.

The search also disclosed a brown briefcase lying in the back seat of the car. It was locked with a combination lock. Trooper McCracken laid it on the hood of the car. Defendant offered to open the briefcase for the officers, but the lock resisted his attempts to do so. The unopened briefcase was taken by the officers to the Cameron Police Department. Defendant repeated his unsuccessful attempts to open the briefcase. He told the officers they could break into the briefcase. They did force the briefcase open and found therein a quantity of methamphetamine.

The trial court denied defendant's motion to suppress the fruits of the search of the automobile and of the briefcase, and, upon trial to the court, found defendant guilty of the misdemeanor of possession of 35 grams or less of marijuana and of the felony of possession of methamphetamine. Defendant appeals from the judgments of conviction.

Defendant's sole point on the appeal is the admissibility of the fruits of the officers' search of the automobile and of the brown briefcase. Defendant says their search and seizure were unreasonable and unlawful under the fourth and 14th amendments. It is that question we are called upon to decide.

■ The trial court made no findings of fact or conclusions of law in his ruling upon the motion to suppress, and none were requested.

We deem all facts to have been found in accordance with the trial court's ruling. *State v. Royal,* 610 S.W.2d 946, 948 (Mo. banc 1981); *State v. Hull,* 595 S.W.2d 49, 53–54 (Mo.App.1980). If there was evidence to support facts which would independently, alternatively or in combination support the order of the trial court, the trial court's ruling will be affirmed.

We affirm the judgment of the trial court.

 A warrantless search is presumptively invalid under the fourth amendment, and it is the State's burden to prove justification for a warrantless search upon defendant's motion to suppress. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In this case, the State offers a variety of justifications for the three separate seizures of contraband. We shall consider only defendant's alleged consent. It was the State's burden to show that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). Voluntariness is a question of fact to be determined from all the circumstances. *Schneckloth,* 412 U.S. at 222, 93 S.Ct. at 2045; *United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497 (1980), *reh'g denied,* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980).

 Defendant says, first, that the officer's stop of the defendant was pretextual, and that the search of the automobile pursuant to such stop was therefore unlawful and the product of the search suppressible upon motion. Defendant cites a number of cases which are profitable for an understanding of the pretextual stop which does not carry with it the powers of search which accompany a legitimate arrest or a *Terry v. Ohio* stop.[1]

Second, defendant claims that if the stop was proper in its inception, Trooper McCracken detained him too long and the officer's conduct was more intrusive than necessary to his legitimate purpose. His argument is that when the officer had written out the ticket for the tinted glass violation and had run the computer check for outstanding warrants, he should have allowed the defendant to proceed, perhaps

with asking him whether he had guns or drugs in the car, but certainly without asking for permission to search the car. Defendant cites *Warren v. City of Lincoln, Nebraska,* 816 F.2d 1254 (8th Cir.1987), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989), and *State v. Young,* 425 S.W.2d 177 (Mo.1968).

It is not necessary, though, for us to decide either of the two points defendant has set forth. One might concede the validity of one point or the other, or both, and yet hold the trial court was not in error in denying defendant's motion to suppress.

The traffic stop gave the officer no justification for the search. At the same time, the traffic stop need not be examined to determine if it was "pretextual" (and the search conducted in connection therewith invalid under *Lefkowitz* ); or if it was "too intrusive" (and the search conducted in connection therewith invalid under *State v. Young,* 425 S.W.2d 177, and *Warren v. City of Lincoln, Nebraska,* 816 F.2d 1254). The traffic stop transaction had been completed. Normally, the officer, his task completed for the time being, would have proceeded on his way and the defendant would have proceeded on his way with a wave of the hand. After all the usual and ordinary incidents of the traffic stop were concluded, the situation, so far as the officer's right to search defendant's person or his car was concerned, did not differ from one in which the defendant had voluntarily stopped his car on the shoulder of the highway in front of the marked highway patrol car in order to ask the officer some legitimate question. The officer testified that his mind was innocent of any suspicion that defendant had contraband in his car; in asking him whether he had any "drugs or guns or anything in his car" the officer, according to his own testimony, was asking a question he was on that day asking everybody he stopped for any traffic violation. He did not testify whether he followed up every question with a search of

---

1. *United States v. Lefkowitz,* 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); *United States v. Portwood,* 857 F.2d 1221 (8th Cir.1988); *State v. Dulany,* 781 S.W.2d 52 (Mo. banc 1989); *State v.*

*Blair,* 691 S.W.2d 259 (Mo. banc 1985), *cert. dismissed,* 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987); *State v. Moody,* 443 S.W.2d 802 (Mo.1969).

the offender's car. The officer's query of the defendant, his ensuing request for permission to search defendant's car, and his proceeding to defendant's car for that purpose, were merely officious.

But no case has held that the police officer's meddlesome conduct disqualifies an otherwise justifiable warrantless search and seizure that follows in its wake. Presumably, an officer may at any time ask a citizen if he has contraband on his person, or in his car, or in his residence, and may ask his permission to search. *See Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 2255, n. 12, 60 L.Ed.2d 824 (1979); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). The citizen may deny consent; if he does, the officer may not conduct the search. *Id.* But if the citizen gives his uncoerced consent, the officer presumably may proceed to conduct the search, and the search is not prohibited by the fourth and 14th amendments.

▪▪▪ *The marijuana cigarette.* It can hardly be said that the discovery and seizure of the marijuana cigarette were the result of any search at all. Defendant himself reached into the car and picked up the object which, when asked, he told the officer was a joint. The officer testified that "joint" is a word commonly used for a marijuana cigarette. The officer looked at the object, now in plain view, and recognized it as a marijuana cigarette. Its warrantless seizure was justifiable as the seizure of contraband in plain view of the officer. *Horton v. California*, —— U.S. ——, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990).[2]

▪▪▪ *The vial of cocaine.* When defendant was found with the marijuana, he was immediately arrested and his Miranda rights read to him. That the arrest was a lawful arrest cannot be doubted; the arrestee was committing, or had committed, a misdemeanor (the possession of a Schedule I controlled substance) in the presence of the peace officer. *Nash v. United States*, 405 F.2d 1047, 1050 (8th Cir.1969); *Conklin v. Barfield*, 334 F.Supp. 475, 481 (W.D.Mo.1971); *State v. Caffey*, 436 S.W.2d 1, 2 (Mo.1969). In connection with a lawful arrest, an officer has the right to search the person of the prisoner. He did so, and the vial of cocaine was found. The vial of cocaine was the product of a search which was clearly reasonable and lawful. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), *reh'g denied*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969).

▪▪▪ *The zigzag cigarette papers and the hemostats.* As an incident to the arrest of the defendant, it is elementary that the officer had the right to search the car he was driving for weapons or for contraband. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, *reh'g denied*, 453 U.S. 950, 102 S.Ct. 26, 69 L.Ed.2d 1036 (1981). The search which discovered the zigzag cigarette papers and the hemostats was, as declared by cases without number, a reasonable and lawful search. *State v. Gage*, 768 S.W.2d 174, 176 (Mo. App.1989). The court did not err in declining to suppress the paraphernalia so seized.

---

**2.** While the evidence supports the thesis that McCracken handed defendant the traffic citation at the patrol car and had thus concluded the traffic citation transaction when he asked and was granted consent to search defendant's car, the evidence is not clear on that point, for Trooper McCracken testified that defendant was not free to leave as he and McCracken walked to defendant's parked car. Defendant, if he reasonably assumed he was not free to leave, was under "seizure," *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), even though he had not been arrested. If we suppose that defendant gave his consent while under restraint, that fact alone does not

invalidate the consent, and the court could find from the totality of the circumstances that defendant's consent to the search was voluntary and uncoerced. *Schneckloth v. Bustamonte*, 412 U.S. at 248, 93 S.Ct. at 2058. Defendant's consent in that case would validate the seizure of the marijuana cigarette, even though we might believe that the officer's seizure of the marijuana cigarette, as the defendant attempted to secrete it to avoid its discovery in the search, was the equivalent of the officer's discovery of the same in the process of searching the car. *See California v. Hodari D.*, —— U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

The *methamphetamine.* The search of the briefcase, according to the testimony of the officers, was with defendant's consent. A defendant's consent, to justify a warrantless search, must be voluntary, that is, not induced by fraud, duress or coercion. *Schneckloth v. Bustamonte,* 412 U.S. at 248, 93 S.Ct. at 2058; *State v. Bunch,* 787 S.W.2d 859, 861 (Mo. App.1990). The burden is upon the State to prove such consent. *Id.* The fact of consent, or its absence, is to be gathered from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. at 227, 93 S.Ct. at 2047. From the testimony of the officers, Trooper McCracken and Trooper Lyon, one can believe that the defendant, without urging from the officers, freely consented to the officers' entry into the briefcase. At the scene of the arrest, when he was asked if he had a key, he offered to open the combination lock to the briefcase and made an effort to do so. Again at the zone office he attempted to open the combination lock, again without success. He volunteered more than once, both at the scene of the arrest and at the zone office, that the officers might break into the briefcase. There was, according to the officers' testimony, no coercion, no show of force, no representations on their part, and in fact, no urging. The trial court upon the evidence could find, as it implicitly did find, that defendant's consent was without coercion.

We find no error in the trial court's overruling the motion to suppress, and we affirm the judgment of conviction.

All concur.