STATE of Missouri, Plaintiff–
Respondent,

v.

Michael Anthony SCOTT,
Defendant–Appellant.

No. 20471.

Missouri Court of Appeals,
Southern District,
Division Two.

June 21, 1996.

Motion for Rehearing or Transfer
Denied July 15, 1996.

Thomas Patrick Deaton, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Kocot, Asst. Atty. Gen., Jefferson City, for respondent.

SHRUM, Chief Judge.

After waiving a jury trial, Defendant was convicted of trafficking drugs in the second degree (cocaine, 450 grams or more, class A felony), § 195.223.2(2), RSMo 1994, and possession of more than thirty-five grams of marijuana (class B felony),[1] § 195.202, RSMo 1994. He appeals these convictions, presenting two points relied on.

First, he contends that the trial court erred when it overruled his motion to suppress and admitted into evidence drugs seized during a warrantless search of his pickup truck as well as certain incriminating statements Defendant made to highway patrolmen after his arrest. He argues that the patrolmen did not have probable cause to

---

1. Defendant was indicted as and found to be a "prior drug offender;" hence his marijuana offense was a class B felony. § 195.285.1.

search his truck, and that his alleged consent to search was involuntary, being "the product of the officer's unlawful detention of Defendant beyond the time reasonably necessary to check Defendant's license and registration and issue a warning for a minor traffic violation."

Defendant's second point maintains that the trial court abused its discretion in denying his discovery request for copies of the traffic ticket books of the patrolman who stopped Defendant. He argues that the information to be gleaned from these books was essential to establish that the patrolman stopped Defendant's truck as a pretext to search for illegal drugs.

We affirm the judgment of the trial court.

## FACTS

On June 18, 1994, at approximately 3:10 p.m., Missouri Highway Patrol Corporal Jack McMullin was on Interstate 44 in Greene County, Missouri, when he stopped an eastbound pickup truck because it was following too closely behind another vehicle. His testimony concerning this encounter included the following.

Defendant was the sole occupant of the pickup. When McMullin first talked to Defendant at the truck, he explained his reason for stopping Defendant. He also asked to see Defendant's driver's license and vehicle registration.

After Defendant produced the requested documents, McMullin and Defendant went back and sat in the patrol car. While there, McMullin ran radio checks on Defendant's driver's license and the vehicle registration, after which he wrote Defendant a warning ticket. McMullin completed these activities within "five minutes or less."

When the checks on the license and truck came back clear, McMullin "gave everything back [to Defendant], and ... ask[ed] him for permission to search the truck." McMullin's testimony about his search request and Defendant's response includes the following:

"Q. Did you indicate to [Defendant] what you intended to search for?

A. Well, I asked him if there were any drugs or guns, anything illegal, in the truck, and he indicated no.

Q. [W]hat did you do at that point?

A. After asking to search, he told me that I could.

Q. About how much time had elapsed since you first stopped the car and brought [Defendant] back to your vehicle?

A. Probably ... in the neighborhood of five to seven minutes.... It was very, very brief."

Defendant and McMullin then walked to the truck, whereupon McMullin "dropped down beneath the truck on the right side and looked across at the gas tank of the truck." He explained that he wanted "to see if the tank had been altered ... [or] messed with, because pickup trucks are notorious for drugs being hauled in the gas tank.... I've had several." McMullin concluded from his initial inspection that the gas tank "ha[d] been recently down." He drew that conclusion from the "shininess ... and ... scarring" of the bolt threads and heads, from the "straps" that were "not tightly secured up," i.e., "[t]here's looseness in them."

Based on his observations of the truck's gasoline tank and the conclusions he drew therefrom, McMullin wanted to "make a closer check ... to determine if there were narcotics ... or ... contraband inside the tank, which I suspected due to the scratches and scarring and so forth." Accordingly, McMullin asked Defendant to accompany him to Troop D highway patrol headquarters, which Defendant agreed to do.

When McMullin and Defendant arrived at the offices of Troop D, they were met by a canine unit. The canine immediately "alerted" to the presence of drugs in Defendant's truck. The search that followed revealed that the gas tank had two hidden compartments in which there were twenty-eight bundles of marijuana and three bundles of cocaine. Thereupon, McMullin placed Defendant under arrest and read the Miranda warnings to him.

Later, during further questioning, Defendant admitted that he knew the drugs were in the truck and that his cousin, Anthony

Tharp, was paying him to transport the drugs to Chicago, Illinois.

Following his indictment by a grand jury, Defendant filed motions to suppress physical evidence and to suppress statements. In support of these motions, Defendant contended that law officers "detained [Defendant] and searched his truck along Interstate 44 and at Troop D headquarters without a warrant, without authority, without probable cause to believe that [Defendant] had committed a felony or that there was contraband in the truck, and without reasonable suspicion that criminal activity was afoot." Continuing, Defendant alleged that:

> "McMullin's actions in detaining [Defendant] were unreasonable in scope in relation to the initial stop. Nothing occurred during the initial stop to give the officer reasonable suspicion of any wrongdoing that justified continued detention of the truck beyond the time necessary to check [Defendant's] driver's license and issue a warning or citation."

Defendant asserted that his alleged permission to search was not based upon a knowing and voluntary consent, but rather was tainted by his invalid detention beyond the time required to check on licenses and write the warning ticket.

On May 24, 1995, the trial court overruled Defendant's motion to suppress. Among other observations, the trial judge wrote: "Though Defendant argues that whatever consent might have been expressed was coerced, I find no indicia of coercion."

On July 25, 1995, Defendant waived his right to a jury trial. In part, the docket entry for that date reads:

> "Parties agree for court to consider the evidence and exhibits submitted at suppression hearing and State's exhibit "A" (Mo state highway patrol lab report) admitted over objection of [Defendant] this date. Court finds [Defendant] guilty as charged in counts I and II."

This appeal followed.

## ANALYSIS

*Point I: Validity of the Search*

In his first point, Defendant contends that the trial court erred in overruling his motion to suppress evidence and admitting the cocaine, marijuana, and statements into evidence because:

> "A state highway patrol trooper obtained [such evidence] as direct and indirect results of a seizure and search in violation of Defendant's [constitutional and statutory] protection from unreasonable, unlawful, and warrantless searches of his person and pickup truck ... in that the officer detained defendant and searched his truck without probable cause to arrest or search or reasonable suspicion of criminal activity and any purported consent or justification for the warrantless seizure and search was a product of the officer's unlawful detention of defendant beyond the time reasonably necessary to check defendant's license and registration and issue a warning for a minor traffic violation."

In *State v. Burkhardt*, 795 S.W.2d 399 (Mo.banc 1990), the court outlined what is required of both the state and the accused regarding a motion to suppress:

> "The proponent of [a motion to suppress] has the burden of establishing that his constitutional rights were violated by the challenged search or seizure; however the burden is on the State to justify a warrantless search and to demonstrate that such falls within an exception to the warrant requirement...."

*Id.* at 404[2] (citations omitted).

■ "Among the exceptions [to the warrant requirement] are ... searches with consent...." *State v. Epperson*, 571 S.W.2d 260, 263[3] (Mo.banc 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979). *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, *reh'g denied*, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971). Where consent to search is lawfully obtained, law enforcement officers may conduct a search commensurate with the permission given. *State v. Hyland*, 840 S.W.2d 219, 221[4] (Mo.banc 1992). This is true even though the search was not otherwise supported by probable cause or reasonable suspicion of criminal activity. *Id.*

■ Moreover, it is not necessary for there to be probable cause to believe that a vehicle contains contraband before an officer is authorized to request permission to search. *State v. Bunts*, 867 S.W.2d 277, 281[11] (Mo. App.1993). Police may at any time ask a citizen if he has contraband on his person or in his car and may ask for permission to search. *Id.* The citizen may deny consent; if he does, the police may not conduct the search. *State v. Morr*, 811 S.W.2d 794, 798 (Mo.App.1991). If consent is not coerced, the subsequent search is not prohibited by the Fourth and Fourteenth Amendments. *Bunts*, 867 S.W.2d at 281[11]. *See also State v. Petrone*, 836 S.W.2d 484, 489 (Mo.App. 1992).

■ Here, Cpl. McMullin testified that Defendant gave consent to search his truck, although Defendant denied this. The trial court, after observing that McMullin's testimony on this issue was credible, concluded that Defendant had consented to the search. This court necessarily must defer to the trial court's superior opportunity to determine the credibility of witnesses. *State v. Beck*, 687 S.W.2d 155, 158[2] (Mo.banc 1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). The deference requirement "[i]s a basic tenet of appellate review— and one deserving of strict compliance." *Id.*

As part of his first point relied on, Defendant argues that his purported consent was involuntary. We note that it is not necessary for us to decide whether Cpl. McMullin had probable cause to search if we find that Defendant's consent to search was voluntary.[2] One might concede the validity of Defendant's claim that McMullin lacked probable cause to search, and yet, hold that the trial court was not in error in denying Defendant's motion to suppress if Defendant's consent was uncoerced. *See Morr*, 811 S.W.2d at 797.

■ If consent is relied upon as the basis for a search, the state has the burden to prove that it was freely and voluntarily given. *Bunts*, 867 S.W.2d at 281[12]; *Petrone*, 836 S.W.2d at 488[6]. Consent is freely and voluntarily given if, considering the totality of all the surrounding circumstances, an objective observer would conclude that the person giving consent made a free and unconstrained choice to do so. *State v. Hyland*, 840 S.W.2d at 221[7]; *Petrone*, 836 S.W.2d at 488[7].

■ On appeal, Defendant does not pursue his claim that the initial stop by Cpl. McMullin was pretextual. He points out, however, that stopping a motor vehicle and detaining its occupants for an alleged traffic violation is a seizure within the meaning of the Fourth Amendment. *State v. Kovach*, 839 S.W.2d 303, 311[28] (Mo.App.1992) (citing *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). This is true even though the purpose of the stop is limited and the resulting detention is quite brief. *Kovach* at 311 (citing *Berkemer*). Consequently, any detention beyond that required for a normal traffic stop is unreasonable "unless the officer has a reasonable suspicion of unlawful activity." *Kovach*, 839 S.W.2d at 311.

Continuing, Defendant insists that his detention did not turn into a consensual encounter because a reasonable person in his position would not have felt free to leave; that McMullin's inquiry about drugs or guns coupled with his request to search amounted to an illegal detention of his person, which rendered his alleged consent involuntary. To support this argument, Defendant relies heavily on *United States v. Ramos*, 20 F.3d 348 (8th Cir.1994). However, there are two reasons why *Ramos* does not aid Defendant.

First, we note that *Ramos* was reversed on rehearing. *United States v. Ramos*, 42 F.3d 1160 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2015, 131 L.Ed.2d 1013 (1995). It is true that on rehearing, the court found that the defendants' continued detention after their licenses and registration had been checked was a violation of the

---

2. Although Defendant cites *State v. Stevens*, 845 S.W.2d 124 (Mo.App.1993) as one of his principal authorities to support his claim that his consent was involuntary, it is not a consent case. In *Stevens* there was no consent to the search which followed the completion of the license and registration check. *Id.* at 127. Consequently, *Stevens* is not authority that aids Defendant on this prong of his point relied on.

Fourth Amendment, as did the court in *Ramos I*, yet *Ramos II* found that the driver's consent was an act of free will which purged the taint of the violation. 42 F.3d at 1164. Second, *Ramos* is factually distinguishable from the instant case because the driver was separated from the passenger shortly after the stop, and they remained apart until after the driver (who was in the officer's patrol car) consented to the search. 42 F.3d at 1161–1162; 20 F.3d at 352. That is not our case.

 Additionally, Defendant's arguments ignore certain other facts and settled legal principles. First, not all personal discourse between law enforcement personnel and citizens constitutes a "seizure" of the person. *State v. Hughes*, 899 S.W.2d 92, 99 (Mo.App.1994). "A seizure occurs only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a person." *Id.* (citing *Reid v. Georgia*, 448 U.S. 438, 442, 100 S.Ct. 2752, 2753–2754, 65 L.Ed.2d 890 (1980)). Further questioning following the conclusion of an investigative stop is allowed if the encounter has turned into a consensual one. *Kovach*, 839 S.W.2d at 311. This change occurs when a reasonable person in the suspect's position would feel free to leave. *Id.*

 There is no litmus paper test for distinguishing a consensual encounter from a seizure or for ascertaining when a seizure has exceeded the bounds of an investigative stop. *Hughes*, 899 S.W.2d at 99. In traffic violation encounters there are endless variations in facts and circumstances, so much variation that it is unlikely that the court can reduce to a sentence or a paragraph a rule that will provide unarguable answers to the question of whether there has been an unreasonable search or seizure in violation of the Fourth Amendment. *See id.*

Despite the seeming difficulty of making the objective determination of whether one feels free to leave, that is, whether the individual has been seized, the case of *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497, *reh'g denied*, 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980) lends guidance. In *Mendenhall*, Justice Stewart wrote that there may be a seizure where there is "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. at 554, 100 S.Ct. at 1877. Our review of the record found none of these objective factors to be present. Moreover, the record does not bear out Defendant's subjective assertion—made for the first time on appeal—that a reasonable person in his position would not have felt free to leave. In his testimony, Defendant did not express any of his thoughts or reactions to McMullin's request to search. Indeed, the record is silent on whether Defendant believed he was at liberty to refuse McMullin's request to search and felt free to leave once he received his license, vehicle registration, and warning ticket. Although Defendant speculates in his brief that his purported consent "was nothing more than acquiescence to the show of authority by two troopers in uniform with firearms[,]" the record belies that claim. When consent to search was sought and given, only one officer, McMullin, was present. Another highway patrolman, Cpl. Cooper, arrived after McMullin sought and received Defendant's consent to search. In addition, Defendant's attempt to invoke the *Mendenhall* "display of a weapon by an officer" factor by noting the fact that the troopers carried holstered firearms is feeble at best. Many law enforcement officers, especially those on routine patrol, do carry holstered firearms while on duty. Common sense dictates that an officer carrying a holstered weapon does not amount to "display of a weapon," for to construe the factor otherwise would vitiate nearly every consensual search.

In summary, we conclude that the trial court did not err when it found no "indicia of coercion" in Defendant's consent to search. Likewise, the trial court did not err when it implicitly found that a reasonable person in Defendant's position would have felt free to leave and that the investigative stop of Defendant changed into a consensual encounter. Therefore, there was no continuation of the "detention ... beyond the time reasonably necessary" to complete the investigative stop.

Next, we consider Defendant's argument that we should adopt the reasoning of *State v. Robinette,* 73 Ohio St.3d 650, 653 N.E.2d 695 (1995), and afford him additional Fourth Amendment protection. Based on *Robinette,* Defendant would have us retroactively require that McMullin clearly inform him that he was free to go once the purpose of the traffic stop was accomplished as a prerequisite to attempting a consensual interrogation. We regard the "free to go" warning established in *Robinette* as a relatively isolated[3] attempt to impose a "litmus paper" test on an area of the law which is not amenable to one. Of course, *Robinette* is not Fourth Amendment authority in Missouri, and we decline to adopt the "free to go" warning as Defendant would have us do. We refuse to interpret the Fourth Amendment as mandating an arbitrary point after which further questioning is not allowed. *See, e.g., United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). In *Kovach,* this court recognized the rule, which we restate here, that further questioning may follow a detention as long as the encounter has become consensual. Moreover, we will continue to make that determination based on the unique circumstances and facts of each case by asking the question whether a reasonable person would feel free to leave. The test is indeed an objective one, not subjective, for "[a]n effective consent to search is not conditional on knowledge of a right to refuse the search." *State v. Bigsby,* 891 S.W.2d 160, 164[10] (Mo.App.1995) (citing *U.S. v. Mendenhall,* 446 U.S. at 558, 100 S.Ct. at 1879, 64 L.Ed.2d 497 (1980)). *See also State v. Hyland,* 840 S.W.2d at 221 (expressly rejecting any requirement that a suspect be told he may refuse to consent).

Since we conclude that there was no "seizure" at the time of the warrantless roadside consensual search of Defendant's vehicle, that search was not constitutionally impermissible, and therefore the trial court did not err in overruling Defendant's motions to suppress in regard to that search. However, our review of this point of error is not complete since Defendant also complains that the roadside search did not give Cpl. McMullin a reasonable suspicion of criminal activity sufficient to justify continued detention. Defendant cites no authority to persuade us of this, and freely admits that Cpl. McMullin testified that his inspection of the truck's gas tank indicated that it had been off the truck. However, Cpl. McMullin also testified that in his experience, pickup trucks were notorious for being used to smuggle drugs in their gas tanks and that he had personally uncovered several being used in this way. Furthermore, the trooper testified that his inspection of the tank revealed that it had *recently* been off the truck, the bolt head and threads were shiny and scarred, and the straps were not tightly secured. Despite Defendant's attempts to generate an innocent explanation for the recent removal of the gas tank, the trial court found that the trooper's inspection of the truck generated reasonable suspicion justifying further detention. Since this finding was not clearly erroneous, we will not reverse it. *See Hughes,* 899 S.W.2d at 95.

In summary, the trial court did not err when it found that the State met its required burden of showing that the warrantless roadside search was justified because McMullin's investigative stop changed into a consensual encounter. Likewise, the trial court did not err when it found that McMullin's observations of the fuel tank which stemmed from the consensual encounter justified Defendant's further detention to meet with the drug dog. Point I is denied.

*Point II: Discovery of Traffic Ticket Books*

In Point II, Defendant contends that the trial court abused its discretion in denying his Motion for Discovery Pursuant to Rule 25.04. The motion sought Cpl. McMullin's traffic ticket books for 1994. Defendant sought these books hoping to establish a pattern of ticket issuance based on "minority racial characteristics." Defendant, who at trial described himself as a "black American," argued that this factor motivated Cpl. McMullin to stop him for a traffic violation as a pretext to search for illegal drugs, thus

---

**3.** *See State v. Mays,* 172 W.Va. 486, 307 S.E.2d 655 (1983); *State v. Jones,* 193 W.Va. 378, 456 S.E.2d 459 (1995).

violating his right to be free from unreasonable searches and seizures as well as his rights to equal protection of the law and due process of law.

Under Rule 25.04, a court must order the state to disclose information that is material and relevant to the defendant's case, provided that the court also finds the request to be reasonable. Hence, Defendant's second point must be decided adversely to him if Cpl. McMullin's ticket issuance patterns are not relevant or material to the propriety of the initial stop. In deciding this question of whether Defendant was denied meaningful discovery, the standard of review is whether the trial court abused its discretion in such a way as to result in fundamental unfairness. *State v. Shepherd,* 903 S.W.2d 230, 232 (Mo. App.1995).

Turning first to Defendant's Fourth Amendment argument, the Missouri Supreme Court has adopted the majority view that "so long as the police do no more than they are objectively authorized and legally permitted to do, an officer's motives in making an arrest are irrelevant and not subject to inquiry." *State v. Mease,* 842 S.W.2d 98, 105–06[3] (Mo.banc. 1992), *cert. denied* 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993) (overruling *State v. Blair,* 691 S.W.2d 259 (Mo.banc 1985) and *State v. Moody,* 443 S.W.2d 802 (Mo.1969)). Defendant does not question the propriety of the initial stop. Cpl. McMullin was objectively authorized and legally permitted to stop Defendant for the traffic violation of following another vehicle too closely. His motives for doing so are irrelevant.

Indeed, the United States Supreme Court has recently recognized that in the context of the Fourth Amendment, the constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved. *See Whren v. United States,* — U.S. —, ——–——, 116 S.Ct. 1769, 1773–75, 135 L.Ed.2d 89 (1996). However, the Court went on to clarify that the Equal Protection Clause does prohibit the selective enforcement of the law based on considerations such as race.

However, even within the framework of the Equal Protection Clause (and the attendant Due Process implications herein) we cannot say that the trial court abused its discretion in denying Defendant's motion for discovery. The motion did not offer any grounds for making this Equal Protection challenge. *See State v. Byrd,* 676 S.W.2d 494, 506 (Mo.banc 1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985). Defendant offered no evidentiary support via other means at his disposal; instead, he rested on his assertion that nothing other than the statements of Cpl. McMullin would corroborate the basis for the stop. *See id.* Moreover, the traffic ticket books are neither the singular means of proving Defendant's Equal Protection violation claim nor are they even sufficient in and of themselves to do so. The ticket books would not show whether Cpl. McMullin has a history of stopping persons with certain characteristics, since a ticket is not written for every traffic stop. Even if a pattern of disproportionate ticket issuance to minorities was revealed by the ticket books, that would not establish that McMullin stopped a disproportionate percentage of minorities. Neither would a pattern of disproportionate ticket issuance to minorities establish that McMullin was stopping minorities on the pretext of a traffic violation in order to search for illegal drugs. Since the ticket books were not sufficient to establish an Equal Protection Violation, and since Defendant offered no other evidence of such a violation at any other time, no fundamental unfairness resulted from the trial court's refusal to grant his motion for discovery.

We find that Defendant's discovery request did not seek relevant information or material and was properly denied by the trial court. The trial court did not abuse its discretion in refusing Defendant's discovery motion. Point II is denied.

We affirm the judgment of the trial court.

PREWITT, P.J., and PARRISH, J., concur.