STATE of Missouri, Respondent,

v.

Daniel A. PETRONE, Appellant.

No. 17658.

Missouri Court of Appeals,
Southern District, Division One.

July 8, 1992.

William J. Fleischaker, Roberts, Fleischaker & Williams, Joplin, for appellant.

William L. Webster, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

Appellant, Daniel A. Petrone, waived trial by jury, was tried by the court, and found guilty of the class B felony of trafficking drugs (marijuana) in the second degree, § 195.223, RSMo Cum.Supp.1989, and the class A misdemeanor of resisting arrest, § 575.150, RSMo 1986. The trial court sentenced Appellant to imprisonment

for eight years on the felony and one year on the misdemeanor, to run concurrently.

Appellant brings this appeal from the felony conviction; he does not appeal the misdemeanor. Because he does not question the sufficiency of the proof of guilt, we set forth only the evidence pertinent to his lone claim of error, which reads:

> The trial court erred in admitting ... the suitcases containing marijuana ... into evidence because said items were unlawfully seized from Appellant without a warrant and ... Appellant's purported consent to search his vehicle was obtained while he was unlawfully detained without any probable cause or articulable suspicion that he had committed a crime other than following another vehicle too closely and while he was detained beyond that period of time necessary to complete the investigation of the infraction of following too closely.

Appellant filed a pretrial motion to suppress the marijuana. The trial court conducted an evidentiary hearing at which one witness testified, Trooper Roger D. Whittler of the Missouri State Highway Patrol. After the hearing, the trial court filed comprehensive findings of fact and conclusions of law, and denied the motion. Appellant preserved the admissibility issue by timely, but unavailing, objection at trial.

In reviewing the trial court's ruling, we decide only whether there was adequate evidence to support it. *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990). The weight of the evidence and the credibility of Trooper Whittler was for the trial court's determination. *Id.*

Whittler testified that about 11:30 a.m., November 11, 1990, he was eastbound in a patrol car on Interstate Highway 44 in Jasper County. He observed a Mercury automobile following another automobile "at a distance less than two car lengths." Whittler followed the Mercury about a half mile at 60 miles per hour, noting it displayed an Arizona license with "grease pencil writings" on the first letter of the license number.

Whittler radioed his dispatcher for a "license check," and was told the license number was not in the files of the issuing state.

Whittler activated his vehicle's emergency lights. The Mercury "pulled to the shoulder" and stopped. Whittler parked behind it, exited his vehicle, and approached the Mercury on foot. Appellant was the driver and sole occupant.

Whittler told Appellant he was following too closely, and asked for identification. Appellant identified himself as Guy Paterra and produced an Ohio driver's license bearing that name. Appellant's picture was on the license.

Whittler asked Appellant if he owned the Mercury. Appellant said he didn't, and presented a "rental car ... contract" to Whittler. The contract showed the Mercury was rented to Guy Paterra. Whittler noticed a map in the front seat.

Whittler asked Appellant to accompany him to the patrol car. Appellant complied.

Whittler initiated an inquiry about the driver's license by radio and examined the rental contract. It showed the renter was "self-employed." Whittler asked Appellant if he had been on a business or personal trip. Appellant replied he was on a business trip and was employed as a salesman by "Jumping Bean Shoe Company."

Whittler observed Appellant appeared nervous in that his speech was quick and he manifested "overrelaxation" in an attempt to mask the nervousness.

Whittler's dispatcher informed him the State of Ohio confirmed the driver's license was issued to Guy Paterra.

Whittler became suspicious the Mercury was carrying drugs. Explaining why, Whittler testified, "I felt the overall situation, his nervousness, the fact that the rental agreement didn't go along with what he was telling me about his employment."

Whittler told Appellant there "was a lot of drugs on Interstate 44." Whittler asked Appellant if he would mind if Whittler searched the Mercury for drugs. Appellant responded, "[N]o, sir, I don't mind." Whittler filled out a "Consent to Search Form" and asked Appellant to "formalize

his consent" by signing it. Whittler handed the form to Appellant at 11:42 a.m. Appellant looked at it and signed it. We infer from Whittler's testimony that Appellant signed the name Guy Paterra.[1]

Whittler and Appellant exited the patrol car. Appellant removed the Mercury's keys from the ignition and opened the trunk, revealing garment bags and suitcases. Whittler smelled "what appeared to be marijuana." He testified, "I felt the garment bag on top and I felt a dry, pressed, vegetative substance, which felt what was marijuana to me."

Whittler told Appellant he was under arrest for transporting marijuana. Whittler reached for Appellant to handcuff him. Appellant pulled the keys from the trunk and shoved Whittler from the shoulder of the road to the grass.

As Whittler drew his revolver, Appellant ran to the front of the Mercury, entered, and started the engine. Whittler moved to the passenger side and, through an open window, ordered Appellant to stop.

Appellant drove off eastbound at high speed. Whittler did not shoot because he did not believe deadly force was warranted. Instead, Whittler pursued in his patrol car.

The chase continued into Lawrence County at speeds reaching 110 miles per hour and constantly above 95. Three deputy sheriffs established a roadblock, but Appellant evaded it by driving in the median. He then exited Interstate 44 onto Highway 174 and continued east into Greene County, Whittler in pursuit.

Appellant stopped the Mercury in a rural area and fled on foot. Whittler ran after him and eventually caught him. Appellant pulled free and ran until overtaken again by Whittler. This time, Whittler held Appellant in a "neck restraint hold" until another officer arrived. After handcuffing Appellant, the officers and Appellant returned on foot to the site where the Mercury and the patrol car were parked. In the Mercury's trunk, Whittler found nine pieces of luggage, each containing plastic wrapped bundles of marijuana.

Appellant was taken to Troop D headquarters in Springfield, advised of his rights and fingerprinted. During fingerprinting, he informed Whittler and another officer he was not Guy Paterra and his true identity was Daniel Petrone.

The trial court's findings of fact were consistent with Whittler's testimony. The trial court's conclusions of law were:

1. Trooper Whittler had legal justification to stop the ... Mercury for the reason that he observed the violation of a traffic law being committed in his presence, namely, the offense described as "following too closely,["] proscribed by Section 304.017 RSMo.

2. The stop was not a pretextual stop as the evidence ... indicated that there was probable cause to believe the Defendant was operating the ... Mercury in violation of Missouri law. Trooper Whittler observed the violation.

3. The Defendant was lawfully detained by Trooper Whittler in the patrol vehicle while computer checks were being conducted on the operator's license the Defendant had given him and on the license plate affixed to the vehicle. Trooper Whittler lawfully observed the demeanor of the Defendant, the inconsistent stories of the Defendant, the documents (i.e. the rental agreement and map) and the fact that the Defendant was making an effort to appear casual to mask his nervousness. Trooper Whittler lawfully took notice and informed the Defendant that I–44 is a route used in drug trafficking. *State v. Burkardt*, 795 S.W.2d 399, 405 (Mo. banc 1990).

4. The consent to search was voluntary and not the product of duress or coercion, express or implied. The totality of the circumstances demonstrate a total lack of duress or coercion. The evidence demonstates [sic] that this was a roadside stop by one officer, no weapons were displayed at or before the Defendant consented, the Defendant was being detained for a traffic investigation, there was no fraud on the part of Troop-

1. We cannot verify our assumption because the consent form is not in the record on appeal.

er Whittler, and the acts and statements of the Defendant indicated that he was in no way intimidated. *State v. Stolzman,* 799 S.W.2d 927, 936 (Mo.App.1990).

. . . .

Appellant's hypothesis of error, as we grasp it, is that he was being unlawfully detained by Whittler when he consented to the search of the Mercury. Appellant concedes Whittler had lawful authority to detain him long enough to decide whether to issue a citation for following too closely.[2] However, maintains Appellant, once Whittler determined Appellant had a valid driver's license, all Whittler could lawfully do was write the traffic ticket or release Appellant. Appellant argues that when Whittler detained him past the time it would have taken to prepare the summons, the detention became unlawful. Consequently, says Appellant, his consent to the search was the fruit of unlawful detention, thereby rendering the consent involuntary and invalid.

Appellant reminds us Whittler admitted that at the time Appellant signed the consent form, he was not free to go. However, in context Whittler's testimony was:

Q. ... at the time you asked Mr. Petrone if you could search the vehicle, it is true that he was not free to leave; isn't that correct?

A. Yes, sir.

Q. Isn't it true that at that point in time you hadn't decided whether or not you were going to write a ticket for following too closely or not; isn't that correct?

A. He was being detained for the investigation of a traffic violation. My investigation was not concluded.

Analysis of Appellant's claim of error begins by recognizing Whittler's search of the Mercury's trunk took place at two locations. It began at the roadside in Jasper County, but was interrupted when Appellant fled. Whittler resumed the search in Greene County after capturing Appellant. We henceforth refer to the Jasper County part of the search as "Search I" and the Greene County part as "Search II."

We next point out Search I does not come within the "automobile exception" to the warrant requirement of the Fourth Amendment to the Constitution of the United States. That exception was first declared in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Under that exception, an officer may, without a search warrant, search an automobile on the highway if he has reasonable cause to believe it contains contraband. 267 U.S. at 158–59, 45 S.Ct. at 287. The Supreme Court of Missouri applied the automobile exception in upholding the search of an automobile in *Burkhardt,* 795 S.W.2d 399.

Here, there is no contention by the State that Search I was authorized by the automobile exception. Instead, the State asserts the evidence was sufficient to show Appellant validly consented to Search I. A search pursuant to consent voluntarily given is valid under the Fourth Amendment. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *State v. Blair,* 638 S.W.2d 739, 750[8] (Mo. banc 1982), *cert. denied,* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983).

As we have seen, the trial court found Appellant's consent was voluntary and not the product of duress or coercion, express or implied.

Challenging that ruling, Appellant directs us to *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). There a state appellate court held the accused was involuntarily confined in a small room at an airport by detectives who lacked probable cause for the detention, that the detention exceeded the limited restraint permitted by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) at the time the accused consented to the search of his luggage, and that the consent was therefore invalid because tainted by the unlawful confinement. The Supreme

---

**2.** Section 304.017, RSMo 1986, reads:

The driver of a vehicle shall not follow another vehicle more closely than is reasonably safe and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the roadway....

Court of the United States held statements given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will. *Royer*, 460 U.S. at 501, 103 S.Ct. at 1326. The Supreme Court affirmed the state court's conclusion that the accused was being illegally detained when he consented to the search and that his consent was tainted by the illegality and thus ineffective to justify the search. 460 U.S. at 507–08, 103 S.Ct. at 1329. However, the Supreme Court stated that had the circumstances amounted to no more than a permissible police encounter in a public place or a justifiable *"Terry-*type" detention, the accused's consent, if voluntary, would have been effective to legalize the search of his luggage. *Royer*, 460 U.S. at 501, 103 S.Ct. at 1326.

█ Here, Appellant's argument assumes he was being illegally detained at the time he consented to the search, in that enough time had elapsed for Whittler to investigate the traffic offense and write the citation. However, Appellant overlooks the evidence that the license number on the Mercury was not on file in the issuing state. According to Whittler, that could mean the plate was invalid. In the segment of his testimony quoted earlier, Whittler stated Appellant was still being detained for investigation of the traffic violation at the time he (Whittler) requested permission to search the Mercury. Validity of the license number had not yet been confirmed.

Up to that point the detention had been brief. Whittler first observed the Mercury about 11:30 a.m. He followed it a half-mile, stopped it, approached it on foot, and talked to Appellant. Whittler and Appellant then walked to the patrol car, entered it, and conversed further. Whittler handed Appellant the consent form at 11:42 a.m. Thus, only about 12 minutes elapsed from the time Whittler first saw the Mercury until he requested permission to search it.

█ Given these circumstances, we are *unpersuaded* Appellant had been detained longer than necessary for the traffic offense when Whittler requested permission to search the Mercury. However, even if Appellant had been unnecessarily detained, we find nothing in the cases he cites indicating this automatically invalidates his consent. As noted earlier, *Royer* recognizes a statement given by a person illegally detained is admissible if it is the result of an independent act of free will and not the product of the illegal detention.

█ When the State relies on consent to justify a search, the State has the burden of proving the consent was freely and voluntarily given. *Schneckloth*, 412 U.S. at 222, 93 S.Ct. at 2045; *State v. Reese*, 625 S.W.2d 130, 132 (Mo. banc 1981). Whether a consent was voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047–48; *Reese*, 625 S.W.2d at 132.

█ In finding Appellant's consent was voluntary and not the product of duress or coercion, express or implied, the trial court noted this was a roadside stop by one officer, no weapon was displayed before Appellant consented, Appellant was being detained for a traffic violation, and Appellant's acts and statements indicated he was not intimidated. Additionally, it is evident Appellant's detention prior to the consent was shorter than 12 minutes. During this time, Whittler was seeking information from the dispatcher regarding the driver's license displayed by Appellant and the license plate on the Mercury.

These circumstances stand in sharp contrast to *Royer*. There, detectives confronted the accused in a public area of an airport and, after examining his airline ticket and driver's license, told him they suspected he was transporting narcotics. They asked him to accompany them to a small room, which he did. Without the accused's consent, a detective used the accused's baggage check stubs to retrieve his luggage from the airline and brought it to the room. Asked if he would consent to a search of the luggage, the accused did not orally respond but unlocked one suitcase with a

key, whereupon the detectives discovered marijuana. The state appellate court in *Royer* held the accused was in confinement, tantamount to arrest, when he unlocked the suitcase. He was in a small enclosed area, the detectives had his ticket and luggage, and it was obvious he was not free to leave. 460 U.S. at 495–96, 103 S.Ct. at 1323. The state conceded in the Supreme Court that had the accused refused to consent to a search of the luggage, the detectives would have held it and sought a search warrant. 460 U.S. at 503, 103 S.Ct. at 1327. On that record, the Supreme Court affirmed the state court's holding that the accused was being illegally detained when he consented to the search and the consent was tainted by the illegality. 460 U.S. at 507–08, 103 S.Ct. at 1329.

Here, Whittler told Appellant the reason for the stop was following too closely, Whittler did not take Appellant from the site of the stop, Whittler exercised no dominion over the Mercury until Appellant signed the consent, and the detention was of brief duration.

Furthermore, although Whittler testified Appellant was not free to depart at the time he signed the consent, there is no evidence Whittler told Appellant so. The subjective intent of the officer is relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent that such intent has been conveyed to the person confronted. *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 1980 n. 7, 100 L.Ed.2d 565 (1988).

Assuming Appellant was detained no longer than necessary for Whittler to process the traffic violation, the evidence fully supports the trial court's finding that Appellant's consent to the search was voluntary and not the product of duress or coercion, express or implied. However, even if Appellant was detained longer than necessary for Whittler to complete his investigation of the traffic violation and write a citation, the evidence amply supports a finding that Appellant's consent to the search was an independent act of free will and not the result of detention. We therefore deny Appellant's assignment of error.

Our holding is consistent with *State v. Morr*, 811 S.W.2d 794 (Mo.App.1991), which involved a stop of an automobile for an equipment violation, a consent by the driver to search, and the discovery of controlled substances. One of the driver's contentions on appeal was that once the officer had written the ticket for the equipment violation and determined there were no outstanding warrants for the driver's arrest, the officer should have allowed the driver to depart without requesting permission to search. Affirming the conviction, the Western District of this Court declared:

> [N]o case has held that the police officer's meddlesome conduct disqualifies an otherwise justifiable warrantless search and seizure that follows in its wake. Presumably, an officer may at any time ask a citizen if he has contraband on his person, or in his car, or in his residence, and may ask his permission to search. *See Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 2255, n. 12, 60 L.Ed.2d 824 (1979); *Terry v. Ohio*.... The citizen may deny consent; if he does, the officer may not conduct the search. *Id.* But if the citizen gives his uncoerced consent, the officer presumably may proceed to conduct the search, and the search is not prohibited by the fourth and 14th Amendments.

*Morr*, 811 S.W.2d at 798.

■■■■ Because we have upheld the trial court's finding that Appellant's consent to the search was voluntary, it follows that both Search I and Search II were constitutionally permissible as "consent" searches. Additionally, Search II was permissible under the "automobile exception" discussed earlier. When Whittler commenced Search II, he had already smelled and felt what he believed was marijuana during Search I, and Appellant had fled upon being told he was under arrest for transporting marijuana. Consciousness of guilt may be inferred from flight. *State v. Rodden*, 728 S.W.2d 212, 219[2] (Mo. banc 1987). Whittler therefore had reasonable cause to believe

the Mercury contained marijuana when he commenced Search II.

Judgment affirmed.

PREWITT, P.J., and PARRISH, J., concur.