STATE of Missouri, Plaintiff–
Respondent,

v.

Timothy A. BUNTS, Defendant–Appellant.

No. 18365.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 16, 1993.

Motion for Rehearing or Transfer to
Supreme Court Denied Jan. 10, 1994.

Dee Wampler, Wampler, Wampler & Catt, Springfield, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jennifer A. Glancy, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GARRISON, Judge.

The trial court, sitting without a jury, found Defendant guilty of possession of more than thirty-five grams of marijuana, § 195.-202, RSMo Cum.Supp.1989, and sentenced him to three years' imprisonment. Defendant's sole point on this appeal is that the trial court erred in overruling his motion to suppress and admitting into evidence the marijuana upon which the conviction was based on the theory that it was obtained as a result of an illegal and unreasonable search and seizure.

In reviewing the trial court's denial of a motion to suppress, we do not substitute our discretion for that of the trial court and determine only whether there was sufficient evidence to support the trial court's ruling. *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990). The weight of the evidence and the credibility of the witnesses are matters for the trial court's determination. *Id.; State v. Villa–Perez,* 835 S.W.2d 897, 901 (Mo. banc 1992). We are to consider the facts and reasonable inferences arising therefrom in the light most favorable to the trial court's decision. *State v. Blair,* 691 S.W.2d 259, 260 (Mo. banc 1985); *State v. Garza,* 853 S.W.2d 462, 463 (Mo.App.1993). "Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *State v.*

*Millorn,* 794 S.W.2d 181, 183 (Mo. banc 1990).

## FACTS

On January 24, 1992, Trooper Mike Shockley, a veteran of seventeen and one-half years with the Missouri State Highway Patrol, was westbound on Interstate 44 in Greene County, checking traffic with radar. Defendant was the operator and sole occupant of an eastbound 1988 Pontiac. According to Trooper Shockley, radar indicated that Defendant abruptly reduced his speed from sixty-four miles per hour[1] to forty-five, causing two following motorists to also reduce their speed and pass Defendant to avoid the possibility of an accident. After crossing to the eastbound lane, the trooper ran a license check on Defendant's vehicle which resulted in a report that the license was not registered to a 1988 Pontiac. Trooper Shockley then stopped Defendant and asked that he step back to the patrol car. While they were in the patrol car discussing the situation, information was relayed by radio that the initial license check information was incorrect and that the license was, in fact, registered to the vehicle being operated by Defendant.

The trooper also testified that, consistent with standard policy, he requested a computer check of Defendant's operator's license. While they were waiting for the results, Trooper Shockley engaged Defendant in conversation. Defendant told him that he was going from El Paso (which the trooper said was known to be a point of origin for drugs moving eastward) to Ohio to set up some telecommunications lines, but was uncertain exactly where he was going when he got there and could not be specific as to who or the type of businesses he was going to contact. The trooper's suspicions were also aroused by the fact that Columbus, Ohio is known to be a drop-off point for drugs, and that Defendant was traveling light (one or two bags in the back seat with very few clothes visible). During the conversation, the trooper noticed that Defendant was very nervous, his hands were shaking, he was moving in his seat constantly, his mouth got dry the longer they talked, and his voice continually cracked.

The license check resulted in a report that Defendant had a pending narcotics charge. While retaining his driver's license, the trooper asked him if he had any type of drugs or weapons in the car. According to the trooper, the Defendant responded that he did not and said, "You can look and see if you want," and that if "you want to look in the trunk . . . you're more than welcome; there's nothing in there." The trooper testified he told Defendant that if he looked in the trunk it would be "considered a search." Defendant admitted that the trooper was not cruel to him, drew no weapon and did not verbally threaten him, although he testified he was a very imposing individual. Defendant then opened the trunk with his key. According to the trooper's testimony, this was ten to twelve minutes after the vehicle was stopped.

Upon looking in the trunk, the trooper detected a light or faint odor of what he knew from experience was marijuana, which led him to believe there was marijuana concealed in the vehicle. When he did not find it in the trunk, he asked Defendant for permission to search the passenger compartment, and specifically asked about a bag behind the driver's seat. According to the trooper, Defendant said, "If you want to look, I'll open it up for you," and did so. When the trooper stuck his head in the car to look at the bag, the odor of marijuana was much stronger. After checking the bag, the trooper placed his hand underneath the back seat and felt a paper bag which he thought probably contained marijuana. He raised the bottom of the seat and the odor of marijuana was even stronger; he then arrested Defendant on suspicion of possession of marijuana.

It was later determined there were packages of marijuana not only underneath the back seat but also taped to the bottom and back of the seat, totaling approximately twenty-eight pounds. Defendant argues that his conviction should be reversed because of the trial court's erroneous ruling on his motion to suppress and permitting the marijuana to be introduced in evidence.

---

1. The speed limit at that location was 65 miles per hour.

## 280

*OPINION*

■ Defendant contends that the initial stop by Trooper Shockley was unjustified and pretextual. The pretextual use of a traffic violation to justify a search is violative of the Fourth Amendment to the United States Constitution. *State v. Moody,* 443 S.W.2d 802, 804 (Mo.1969); *State v. Lorenzo,* 743 S.W.2d 529, 532 (Mo.App.1987).

Defendant argues that the pretextual nature of the stop is indicated by the fact that Trooper Shockley had no intention of issuing a citation to Defendant, but only to warn him, and there was no indication that any warning was actually given. The trooper testified, however, that before stopping the vehicle he had information (which was later corrected) that Defendant's license plate did not check to that vehicle. He also testified that he intended to warn Defendant about his drastic reduction in speed and the fact that he should be more attentive to other drivers on the road behind him.

■ Our Supreme Court has held that, in determining if an arrest is in violation of the Fourth Amendment to the United States Constitution, it is appropriate to make an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and the officer's motives or state of mind are irrelevant and not subject to inquiry. *State v. Mease,* 842 S.W.2d 98, 105–106 (Mo. banc 1992). *See also State v. Huckin,* 847 S.W.2d 951, 954 (Mo.App.1993); *State v. Childress,* 828 S.W.2d 935, 945 (Mo.App.1992). A traffic stop may be justified by observation of conduct which may not itself even constitute a traffic violation but merely an unusual operation. *State v. Huckin,* 847 S.W.2d at 955; *Wallace v. Director of Revenue,* 754 S.W.2d 900, 902 (Mo.App.1988). In the instant case, there was, therefore, evidence from which the trial court could find that the stop by Trooper Shockley was not pretextual, was not for the purpose of making a search of the vehicle, and was based upon factors which would authorize a law enforcement officer to warn a motorist. Unlike *State v. Lorenzo,* 743 S.W.2d at 532, cited by Defendant, we are unable to say that there is an inference here that the traffic stop was for the sole purpose of searching for drugs, and we are unable to find that the trial court was clearly erroneous in failing to draw that conclusion.

■ In arguing that his continued detention was also improper, Defendant cites the following language from *State v. Riddle,* 843 S.W.2d 385, 387 (Mo.App.1992), apparently for the proposition that his detention was longer than necessary to effect the purpose of the stop, and therefore any consent was the result of an unreasonable seizure.

> During a routine traffic stop, an officer may "request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." ... Any detention beyond that required for a normal traffic stop is an unreasonable seizure.... The Missouri Supreme Court indicates if a traffic stop "extends beyond the time reasonably necessary to effect its initial purpose, the seizure may lose its lawful character" unless reasonable suspicion of another crime arises....

Stated another way, the lawful character of a detention, and therefore seizure, may be extended if a new factual predicate for reasonable suspicion is found during the period of lawful seizure. *See State v. Hyland,* 840 S.W.2d 219, 221 (Mo. banc 1992).

■ Trooper Shockley's testimony indicated that after going to the patrol car he requested a computer check on Defendant's driver's license. Such a computer check is authorized as part of a routine traffic stop. *State v. Riddle,* 843 S.W.2d at 387. While waiting for the results of the license check, Trooper Shockley testified he began to notice that Defendant was very nervous, shaking, moving in the seat, and his voice was cracking. Suspicious conduct and movements have been determined to be appropriate considerations concerning the right of an officer to further detain and even eventually search a vehicle. *See State v. Burkhardt,* 795 S.W.2d at 405. Finally, the trooper testified that the search was initiated pursuant to

Defendant's consent within ten to twelve minutes after the initial stop occurred. This court has previously held that a lapse of twelve minutes during a traffic stop before permission to search is requested does not constitute an unnecessarily long detention. *State v. Petrone,* 836 S.W.2d 484, 488 (Mo. App.1992). In the instant case, there was evidence from which the trial court could have concluded that the request to search and Defendant's consent occurred within the time reasonably necessary to carry out the purpose of the traffic stop, or as extended by the appearance of a reasonable basis for suspicion of other violations.

 Defendant appears to argue that the search of the car was without probable cause or, alternatively, that his consent was not voluntary. It is not necessary that there be probable cause to believe that a vehicle contains contraband before an officer is authorized to request permission to search. An officer may at any time ask a citizen if he has contraband in his car and may ask for permission to search. If consent is given without coercion, the subsequent search is not prohibited by the Fourth and Fourteenth Amendments. *State v. Morr,* 811 S.W.2d 794, 798 (Mo.App.1991). *See also State v. Petrone,* 836 S.W.2d at 489.

 If consent is relied on as the basis for a search, the State has the burden to prove that it was freely and voluntarily given. *State v. Petrone,* 836 S.W.2d at 488. "Whether a consent was voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances...." *Id.*

 In the instant case, Defendant points not only to the fact that he was still in the patrol car when he gave consent to look in the trunk, but also that Trooper Shockley was still retaining his operator's license and he did not feel free to leave. Retention of an operator's license by the officer does not necessarily constitute coercion which will invalidate a consent to search or, in the instant case, to look. *See State v. Hyland,* 840 S.W.2d at 221. As in *Hyland,* the record in the instant case is devoid of evidence of

coercion, threatening tone or show of force, or that Defendant requested a return of his driver's license. While the Defendant did testify that he requested, but was denied, permission to leave, the trooper's testimony was to the contrary and provided substantial evidence which could have been believed by the trial court.

Defendant argues that in *State v. Riddle, supra,* the court, in affirming the trial court's sustaining of a motion to suppress, noted that defendant was still in the police car when he consented to the search. The ruling in *Riddle,* however, was not that the defendant's presence in the police car at the time of consent was determinative, but only that the appellate court was unable to say that the trial court erred in holding that the State had not met its burden of showing that the consent to search was voluntary.

 Defendant also argues that permission to "look" is not permission to "search." In the instant case, Trooper Shockley's testimony that he asked for and received permission to look in the trunk was verified by Defendant. The trooper's testimony indicated, however, that while looking in the trunk he noticed a light or faint odor of what he recognized as raw marijuana. A warrantless search of an automobile may be conducted on probable cause to believe that contraband is concealed in the vehicle. *State v. Burkhardt,* 795 S.W.2d at 404. Probable cause may arise when the facts and circumstances within the knowledge of the officer are sufficient to produce in a man of reasonable caution a belief that the contents of the automobile offend the law. *Id.* Once the trooper detected the odor of what he could, based on experience, identify as marijuana, he was authorized to proceed, without additional consent, to search the vehicle. Our Supreme Court has stated:

Any doubts as to Officer Brown's authority to search the truck are dispelled by his detection of the odor of marijuana issuing from the rear door. It has been routinely held that "[w]here there is a legitimate reason for stopping a vehicle, and the officer thereafter detects the odor of marijuana emanating from the stopped vehicle, and is by virtue of training or experience

able to identify it as marijuana, an ensuing search is based on probable cause."

*State v. Villa–Perez*, 835 S.W.2d at 902.

In the instant case, based upon the evidence presented to the trial court, we are unable to say that it erred in overruling Defendant's motion to suppress and in permitting the marijuana to be introduced in evidence.

Judgement affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.