**STATE of Missouri, Plaintiff–Respondent,**

v.

**Arthur PETERSON, Defendant–Appellant.**

**No. 21630.**

Missouri Court of Appeals, Southern District, Division Two.

March 4, 1998.

Motion for Rehearing or Transfer to Supreme Court Denied March 26, 1998.

Douglas R. Hoff, Asst. Public Defender, St. Louis, for Defendant-Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Meghan J. Stephens, Jefferson City, for Plaintiff-Respondent.

BARNEY, Judge.

A Pemiscot County jury found Arthur Peterson (Defendant) guilty of violating section 195.211, RSMo 1994, a class B felony of possession of a controlled substance with intent to deliver. Defendant appeals his conviction and resulting sentence of 12 years in the Missouri Department of Corrections.

Defendant's sole point on this appeal is that the trial court erred in overruling his motion to suppress evidence of approximately 30 pounds of marijuana found in his vehicle, as well as in refusing to suppress a statement made by Defendant to a Missouri Highway Patrolman, acknowledging that the marijuana was his. Defendant contends that the contraband was obtained, and the statement was made, as a result of an illegal and unreasonable search and seizure following a traffic violation.

▆▆▆ "In reviewing the trial court's denial of a motion to suppress, we do not substitute our discretion for that of the trial court and determine only whether there was sufficient evidence to support the trial court's ruling." *State v. Bunts,* 867 S.W.2d 277, 278 (Mo.App.1993)(citing *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990)). "The weight of the evidence and the credibility of the witnesses are matters for the trial court's determination." *Id.; see State v. Villa–Perez,* 835 S.W.2d 897, 901 (Mo. banc 1992). We review the evidence in the light most favorable to the verdict. *State v. McNaughton,* 924 S.W.2d 517, 521 (Mo.App.1996); *see also Bunts,* 867 S.W.2d at 278. "Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *Bunts,* 867 S.W.2d at 278(quoting *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990)).

On October 9, 1996, Missouri Highway Patrol Trooper Jeffrey Heath (Trooper Heath) was on duty along Interstate 55 in Pemiscot County, Missouri, when he noticed a 1991 Chevrolet S–10 extended cab pickup truck, with Texas license plates, driving in the left lane, traveling north. Although the left lane is a passing lane, Trooper Heath noticed that the truck was not passing anyone. Trooper Heath followed the pickup in the passing lane for approximately six and one-half miles and then activated his emergency signals. The pickup truck, being driven by Defendant, pulled over.

Trooper Heath testified at the motion to suppress hearing that he requested Defendant to accompany him into Trooper Heath's patrol car. Trooper Heath then initiated a computer check of Defendant's driver's license and truck registration. No warrants were found to be outstanding for Defendant and it was determined that the truck was registered to Defendant's father and that Defendant's driver's license was valid. Trooper Heath further testified that he then told Defendant he was free to go. However, almost immediately after Defendant exited the patrol car, Trooper Heath inquired of Defendant as to whether there were any guns, drugs, or weapons in the vehicle. Defendant became nervous, started breathing heavily and looked around rapidly and said no. Trooper Heath then requested permission to search the truck and its contents. Defendant responded (in Trooper Heath's words) that he "didn't want me [Trooper Heath] dragging all of his stuff out on the shoulder of the road." Upon assurances that this would not happen, Trooper Heath testified that Defendant then told Trooper Heath that he could perform the search.[1]

Upon searching behind the passenger seat, underneath some items, Trooper Heath testified that he found a clear plastic luggage bag which contained four silver bundles. Additionally, six more silver bundles were found behind the driver's seat. It was later determined that the bundles contained marijuana weighing approximately 29.66 pounds. Trooper Heath testified that he gave Defendant his *Miranda* rights.[2] He further testified that Defendant told him that "the marijuana was all his, that there was about 30 pounds of marijuana."

## II.

▆▆▆ "The pretextual use of a traffic violation to justify a search is violative of the Fourth Amendment to the United States Constitution." *Bunts,* 867 S.W.2d at 280. However, a "traffic stop may be justified by observation of conduct which may not itself even constitute a traffic violation but merely an unusual operation." *Bunts,* 867 S.W.2d at

---

1. Trooper Heath also testified that he questioned the passenger in the pickup truck, Mr. Mauricio Garcia. Mr. Garcia indicated that he and Defendant were traveling to Michigan to visit a friend. He stated that he was unemployed and that Defendant was "laid off" and that they had plenty of time to visit their friend. However, Mr. Garcia could not immediately recall the name of the mutual friend but eventually "stuttered" and said his name was "Tony." Mr. Garcia was unaware of Tony's telephone number. Mr. Garcia was also unable to immediately tell Trooper Heath what city in Michigan they were traveling to. After "stuttering around" a little bit, Mr. Garcia indicated that he and Defendant were traveling to Grasse, Michigan.

2. In *Miranda v. Arizona,* the Supreme Court of the United States set out what has become known as "the Miranda warning" as a means of satisfying the "procedural safeguards" required to protect an individual's privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

280(citing *State v. Huckin*, 847 S.W.2d 951, 955 (Mo.App.1993)).

In the instant case, there was evidence from which the trial court could find that the stop by Trooper Heath was not pretextual, but rather based upon factors which would authorize a law enforcement official to warn a motorist. That is to say, Defendant appeared to be in violation of section 304.015.6, RSMo 1994, by operating his vehicle in the left passing lane for an inordinate period of time, particularly when no other vehicle was being passed.[3]

■ As a general rule, searches conducted without a search warrant are unreasonable and violate a defendant's Fourth Amendment rights. *See State v. Smith*, 926 S.W.2d 689, 693 (Mo.App.1996); *State v. Looney*, 911 S.W.2d 642, 644 (Mo.App.1995); *State v. Perrone*, 872 S.W.2d 519, 522 (Mo. App.1994). However, a valid consent to a search allows a law enforcement officer to conduct a warrantless search of a vehicle as an exception to the Fourth and Fourteenth Amendment requirements that an authorizing search warrant be issued before a search is permitted. *McNaughton*, 924 S.W.2d at 523. "The scope of a consent search is limited to the breadth of the consent given." *Id.*

■ Thus, our Supreme Court has approved of consensual searches "because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *State v. Hyland*, 840 S.W.2d 219, 221 (Mo. banc 1992)(quoting *Florida v. Jimeno*, 500 U.S. 248, 249–51, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991)). Consequently, it is "not necessary that there be probable cause to believe that a vehicle contains contraband before an officer is authorized to request permission to search." *Bunts*, 867 S.W.2d at 281. "An officer may at any time ask a citizen if he has contraband in his car and may ask for permission to search." *Id.* "If consent is given without coercion, the subsequent search is not prohibited by the Fourth and Fourteenth Amendments." *Id.*(citing

*State v. Morr*, 811 S.W.2d 794, 798 (Mo.App. 1991)).

■ Nevertheless, "if consent is relied on as the basis for a search, the State has the burden to prove that it was freely and voluntarily given." *Bunts*, 867 S.W.2d at 281(citing *State v. Petrone*, 836 S.W.2d 484, 488 (Mo.App.1992)). "Whether a consent was voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. . . ." *Id.*

Our review of the record convinces us that Defendant's consent to the search of his vehicle was freely granted.

■ We initially note that a reasonable investigation of a traffic stop may include asking for the driver's license and registration of the vehicle, requesting the driver to sit in the patrol car and asking the driver about his destination and purpose. *McNaughton*, 924 S.W.2d at 523. Additionally, in the instant matter, we observe that the investigatory procedure wherein Defendant was being detained lasted a reasonable time. Defendant testified that he was in the patrol car "a good 15 minutes." In *Petrone*, 836 S.W.2d at 488, the court held that a lapse of 12 minutes between the time of a traffic stop and the officer's request for permission to search is not an unreasonable period. *See State v. Joyce*, 885 S.W.2d 751, 755 (Mo.App. 1994).

■ While Defendant denied that he gave permission for Trooper Heath to search the vehicle, the trial court accepted Trooper Heath's version that Defendant, indeed, gave his consent to the search. "Decisions of credibility are left to the trial judge." *McNaughton*, 924 S.W.2d at 523. Although Trooper Heath could not remember the precise words used by Defendant in consenting to the search and authorizing Trooper Heath to search the vehicle, Defendant placed no limitations on the scope of the search, save for the request that he did not want "his stuff out on the shoulder of the road." *See*

---

**3.** "All vehicles in motion upon a highway having two or more lanes of traffic proceeding in the same direction shall be driven in the right-hand lane except when overtaking and passing another vehicle or when preparing to make a proper left turn or when otherwise directed by traffic markings, signs or signals." § 304.015.6, RSMo 1994.

*Hyland,* 840 S.W.2d at 222. A reasonable person, viewing this scene objectively, would necessarily conclude from Defendant's verbal and nonverbal actions that Defendant consented to the scope of the search Trooper Heath conducted. *See id.*

In the instant case, based upon the evidence presented to the trial court, we are unable to say that it erred in overruling Defendant's motion to suppress evidence of the marijuana found in the pickup truck. *See Bunts,* 867 S.W.2d at 282. Neither can we conclude that the trial court erred in refusing to suppress any statement made by Defendant acknowledging that the marijuana was his.[4]

Judgment affirmed.

MONTGOMERY, C.J., and PARRISH, P.J., concur.

---

4. At trial, Defendant testified, in part, as follows: Q. [by prosecutor] Was this dope given to you?
A. [by Defendant] Sir, I'm gonna be honest with you, and this is as much as you're gonna be able to get on this particular subject. That [the marijuana] was in my vehicle and there ain't no doubt about it, and I take full responsibility for anything in my vehicle, and that's as far as that goes.