STATE of Missouri, Respondent,

v.

Crystal PACHECO, Appellant.

No. 24625.

Missouri Court of Appeals,
Southern District,
Division One.

April 17, 2003.

· Emmett D. Queener, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Mazza Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Appellant, Crystal Pacheco, ("Defendant") appeals from her conviction and sentence after a jury found her guilty of second-degree murder, § 565.021; driving while intoxicated, § 577.010 and § 577.023; leaving the scene of an accident, § 577.060; and driving with a revoked license, § 302.321.[1] The trial court imposed respective concurrent sentences of thirty years, five years, and two years in the Missouri Department of Corrections, and one year in the Greene County jail. Defendant raises two points of trial court error. As more fully explained below, in her first point Defendant contends the trial court erred when it denied her motion to suppress evidence seized without a warrant together with the results of the subsequent laboratory examination of that evidence. In her second point, Defendant posits trial court error on the basis of improperly admitted testimony from an unavailable witness whom Defendant could not effectively cross-examine. We affirm.

"We review the evidence presented at trial in the light most favorable to the verdict." *State v. Middleton,* 995 S.W.2d 443, 452 (Mo. banc 1999).

The record shows that Ms. Walci Cory worked as a dietary aide at the Springfield Residential Center. On September 23, 2000, Ms. Cory and co-worker Ms. Sandra Fisher timed out at 8:56 p.m. and waited outside their workplace for a member of Ms. Cory's family to pick her up. No one

---

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

showed up, however, and after a brief wait Ms. Cory elected to walk home, proceeding north along West Avenue.

Ms. Cory failed to arrive home, and the next morning a family member requested the police to search the route between Ms. Cory's workplace and home. Police officers discovered her body in a ditch at the 800 block of South West Avenue, approximately four or five blocks from her workplace and in the proximity of Ballpark Tavern. Ms. Cory had various injuries, tears in the back-left part of her shirt, and blue paint markings located below the tears. Sergeant Randall Wayne Latch and other police officers investigated the scene and uncovered various pieces of evidence, including: blue paint chips from the back of Ms. Cory's shirt and immediate surrounding area; a piece of plastic resembling part of an automobile grill assembly; pieces of silver plastic; a yellow piece of plastic which resembled a vehicle's reflector; and a part from a headlight assembly which had manufacturer's numbers and a marking which indicated a Ford vehicle. Based on this evidence, Sgt. Latch concluded that Ms. Cory was struck from behind by a blue Ford. Later that day, Sgt. Latch observed a Ford van with a grill assembly similar to that found at the accident scene, and concluded that the vehicle involved in the accident was a Ford van. Sgt. Latch and other police officers commenced a search for a blue Ford van with front-end damage, and a canvass of the neighborhood revealed such a vehicle parked in Defendant's driveway, located just north of where Ms. Cory's body was discovered.

Sergeant Latch and several other police officers proceeded to Defendant's house, where a blue Ford van was parked in the driveway at the front of the house. The officers observed that the van had damage to the hood and front-right fender, the headlight assembly, and reflector. Defendant responded to the officers' knock at the door. After Sgt. Latch read Defendant her *Miranda* rights, she spoke with the officers.[2] Defendant stated that she did not know how the van was damaged, that other family members who drove the van were out of town for the weekend, and that she had eaten dinner out with a friend the previous night.

In a subsequent videotaped interview at the police station, Defendant waived her *Miranda* rights and provided additional information. Defendant admitted that she lied about having dinner with a friend the previous night, and stated that, instead, she had consumed alcohol at her home from approximately 4:30 p.m. until between 8:50 and 9:10 p.m., at which time she walked to "Ballpark Tavern."[3] Defendant stated that she remained at the tavern until between 12:00 a.m. and 1:00 a.m., when she and another patron returned to her house.[4] Defendant stated that she had but one set of keys to the van and that she was the only person with access to the van at the time the incident occurred. Defendant also stated that she was "highly intoxicated" the previous evening but denied driving the van. The police arrested Defendant at the conclusion of the interrogation.

Sgt. Latch remained with Defendant's van during Defendant's interrogation at the police station. Sgt. Latch testified

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** Defendant testified that she consumed a 12-pack of beer before going to the Ballpark Tavern.

**4.** A cash register receipt obtained from the Ballpark Tavern for that night revealed that Defendant paid a bar tab at 9:03 p.m.

that he collected loose paint chips and a piece of "Bondo" (variously described as a "body filler" for a vehicle or "body repair material") from the van to prevent the loss of important evidence. Sgt. Latch also called a tow truck and had the van towed to the police garage, where officers took photographs of the damage.[5] Latch obtained a warrant to search the van the following day. Afterwards, the Missouri State Highway Patrol Crime Laboratory conducted tests on the van and other seized evidence, and concluded that the paint chips from the van were similar to those recovered from Ms. Cory's body.

During their investigation, police also interviewed Mr. Terry Cook, Defendant's next door neighbor. Mr. Cook provided a written statement to officers which indicated that Defendant's van pulled into his driveway at approximately 9:30 p.m. on the night of the accident and parked bumper-to-bumper with his own car, but that after he yelled, the driver re-entered the van and drove it to Defendant's driveway approximately 40 feet further down the road. Although Mr. Cook did not refer to the driver by name, Officer Bryan Crumm testified that when providing the statement Cook referred to the driver as his "next-door neighbor." The record shows that Defendant lived next door to Mr. Cook.

Mr. Cook also testified at a preliminary hearing prior to trial, at which time he specifically identified Defendant as the driver of the van. Mr. Cook also placed the time of the event at sometime after 9:00 p.m., and added that while he had not observed the damage to the van he did notice a wire hanging out of the left headlight. Defendant and her counsel were present at the hearing and Defendant's counsel cross-examined Mr. Cook about his observations.

Defendant raises two points of trial court error. In her first point Defendant contends the trial court erred when it denied her motion to suppress evidence seized from her van and the results of the subsequent laboratory examination of that evidence, all in violation of her right to due process of law and to be free from an unreasonable search and seizure as guaranteed by the United States Constitution and the Missouri Constitution. In like manner, in her second point, Defendant maintains she was denied her rights to due process of law and the right to confront and effectively cross-examine witnesses against her when the trial court improperly admitted the preliminary hearing testimony of Mr. Cook, which identified her as the driver of the van at the approximate time of the accident.

As previously set out, in her first point Defendant asserts the trial court erred when it denied her motion to suppress and admitted certain evidence at trial. Specifically, Defendant sought to suppress evidence seized from her van and the results of the subsequent laboratory examination of that evidence. Defendant argues that the officers lacked a valid search warrant and that no valid exception existed to the warrant requirement.

In reviewing the trial court's denial of Defendant's motion to suppress, " 'we do not substitute our discretion for that of the trial court and determine only whether there was sufficient evidence to support the trial court's ruling.' " *State v. Rowland,* 73 S.W.3d 818, 821 (Mo.App.2002) (quoting *State v. Peterson,* 964 S.W.2d 854, 856 (Mo.App.1998)). We reverse the trial court's ruling on a motion to suppress only if that ruling is clearly erroneous, which occurs when we are left with a definite and firm belief a mistake has been made.

---

5. Latch testified that the van was towed shortly after 5 p.m.

*Rowland,* 73 S.W.3d at 821. We view all evidence and any reasonable inferences therefrom in the light most favorable to the trial court's ruling, and we are free to disregard evidence and inferences contrary to that ruling. *Id.* We also give due deference to the trial judge, who is in a superior position to assess the credibility of witnesses and the weight of the evidence. *Id.* " 'Although we review the facts under a clearly erroneous standard, the issue of whether the Fourth Amendment has been violated is a question of law which we review *de novo.*' " *State v. Potter,* 72 S.W.3d 307, 313 (Mo.App.2002) (quoting *State v. Middleton,* 43 S.W.3d 881, 884 (Mo.App.2001)).

■ "The Fourth Amendment protects an individual only from 'unreasonable' searches and seizures [and] Missouri's constitutional protection is co-extensive with that provided under the United States Constitution." *State v. Adams,* 51 S.W.3d 94, 98 (Mo.App. 2001); *see also State v. Deck,* 994 S.W.2d 527, 534 (Mo. banc 1999), *cert. denied,* 528 U.S. 1009, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999). As a general rule, a search that is conducted outside of the judicial process and without prior approval by a judge or magistrate is *per se* unreasonable. *Adams,* 51 S.W.3d at 98. However, the state may introduce evidence gathered from such a search if it proves that the search falls within one of the exceptions to the warrant requirement. *Id.*

Defendant contends that the seizure of the van and the paint chips and other items seized from the van did not fall within any exigency exception to the warrant requirement. She argues that she had already been taken by the police to the police station; that no one else had

access to the van; and that Sgt. Latch had remained with the van to prevent any loss of evidence pending receipt of a valid search warrant. Therefore, Defendant argues that no legitimate concerns about the loss or destruction of potential evidence existed which justified the seizure prior to obtaining a valid search warrant. We disagree.

■ We first consider whether the police officers had the lawful right to be in Defendant's driveway. While the Fourth Amendment's protections extend to the curtilage of a person's home, this does not mean that police cannot enter a curtilage area without a warrant when investigating a crime or conducting other official business. "To the contrary, 'it is altogether proper for police with legitimate business to enter the areas of curtilage open to the public.' " *State v. Edwards,* 36 S.W.3d 22, 26 (Mo.App.2000) (quoting *Kriley,* 976 S.W.2d at 22); *see also State v. Akers,* 723 S.W.2d 9, 14–15 (Mo.App.1986).

■ Whether a driveway or other area of the curtilage of the home should be deemed "open to the public" and therefore subject to warrantless entry by the police is determined on a case-by-case basis, and will hinge upon whether a resident has a reasonable expectation of privacy in that area. *Edwards,* 36 S.W.3d at 26 n. 2.[6] "If in a particular case an occupant has taken effective steps to protect areas of the property from view and from uninvited visitors, then a privacy interest may be found in that area sufficient to preclude police from coming onto it for investigative purposes without permission." *Id.* at 27. Alternately, "[i]f an occupant permits visitors to enter onto portions of the property, such as the driveway or front walk, so as to

---

**6.** The "curtilage" of a person's home generally is defined as "the enclosed space of ground and buildings immediately surrounding a dwelling house." *Edwards,* 36 S.W.3d at 26.

reach the door, or if such areas are visible from outside the property, then the occupant is generally held not to have a reasonable expectation of privacy in those portions of the property." *Id; see also United States v. Ventling*, 678 F.2d 63, 66 (8th Cir.1982).

■ Here, the record does not suggest that Defendant sought to prevent public entry to her property via a fence, gate, or other measure. Defendant parked the van on her driveway to her home in plain view of anyone who drove past her house. The damage to the van was readily apparent to anyone in this public area. Such factors fail to suggest that Defendant had any expectation of privacy regarding her driveway and her property on the driveway. As such, police officers had the lawful right to be present on Defendant's driveway as they approached the front door of Defendant's home. *See Edwards*, 36 S.W.3d at 27; *Kriley*, 976 S.W.2d at 22.

■ We next consider whether the officers had probable cause to believe that the evidence seized—in this case the van and paint chips and other items from the van—were connected to a crime. "Probable cause exists where the apparently incriminating character of the item is obvious." *Johnston*, 957 S.W.2d at 742–43. Probable cause also is a "flexible, common-sense concept." *Rowland*, 73 S.W.3d at 822 (quoting *State v. Hampton*, 959 S.W.2d 444, 451 (Mo. banc 1997)). No precise test exists to determine whether probable cause exists. *Rowland*, 73 S.W.3d at 822. Rather, probable cause exists when the " 'officer's knowledge of the facts and cir-

cumstances is sufficient to warrant a prudent person's belief that the suspect is committing or has committed the offense.' " *Adams*, 51 S.W.3d at 99 (quoting *State v. Neal*, 849 S.W.2d 250, 258 (Mo. App.1993)).

■ In the present situation, the officers had not yet made an arrest but believed from the apparent, incriminating character of the evidence that Defendant's van was involved in the commission of a crime. *See Adams*, 51 S.W.3d at 99. As the record shows, based upon the type of injuries received by Ms. Cory and evidence found at the scene of the accident, police officers believed Ms. Cory had been struck by a blue Ford van or truck.[7]

Sergeant Latch testified that he saw another Ford Econoline van with a headlight assembly very similar to that recovered at the scene of the accident. A canvass of the neighborhood revealed a van matching that description parked in Defendant's driveway. Sergeant Latch and other officers observed damage to the van consistent with the evidence found at the scene of the accident—i.e. the missing headlight assembly, damage to the grille, damage to the hood, damage to the front right fender, and damage to the reflector. We find that these facts and circumstances warranted police officers' belief that the van had been used to commit a criminal offense, giving rise to probable cause for a search of the van. *See id.*

■ Furthermore, we determine that exigent circumstances also existed which justified the seizure of the paint chips, the piece of "Bondo," and the van

7. Sergeant Latch testified that injuries sustained led him to believe that Ms. Cory was "struck in the left, rear shoulder blade area, by a motor vehicle." Evidence discovered at the accident scene which supported this view included: a headlight assembly with some manufacturers' numbers and a "Ford" sym-
bol; blue paint chips found on the back of Ms. Cory's shirt, underneath her body, and in the surrounding vicinity; plastic fragments from the corner piece of a grill assembly; part of a headlight assembly; and a piece of plastic believed to be from a reflector.

itself. " 'As a practical matter, exigent circumstances exist whenever an automobile is involved; the mere possibility that the vehicle can be moved is generally sufficient justification for a warrantless search.' " *Middleton,* 995 S.W.2d at 458 (quoting *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990)); *see also State v. Jordan,* 978 S.W.2d 36, 40 (Mo.App.1998); *State ex rel. Boling v. Malone,* 952 S.W.2d 308, 311 (Mo.App.1997).

As discussed, the police officers had the lawful right to be in Defendant's driveway and had probable cause to believe that the van was involved in the accident. While Defendant was detained, interrogated at the police station, and eventually arrested, Sgt. Latch remained with the van to protect against the loss of potential evidence of its involvement in the accident. Sgt. Latch testified that he noted paint chips and a piece of Bondo were loose and in danger of falling should the van be moved. To prevent the loss of what he deemed important evidence, Sgt. Latch collected samples of those paint chips and Bondo from the van.

Our Supreme Court determined in *Middleton* that a search and seizure under similar circumstances was appropriate and the evidence obtained was properly admitted. *Middleton,* 995 S.W.2d at 458. In *Middleton,* police found a white pickup truck stuck in the mud in a field across the road from a murder suspect's home which was being searched pursuant to a search warrant. An officer looked into the window of the truck and saw a small square of adhesive on the dashboard that appeared to match the adhesive on the back of a small plastic clock that had been discovered at the murder scene. *Id.* at 457–58. An officer entered the vehicle without a search warrant and removed a piece of the dashboard containing the adhesive. On appeal, Defendant Middleton claimed that the adhesive square should not have been admitted into evidence because it was unlawful for the officer to have opened the door and removed the adhesive square without first obtaining a search warrant. *Id.* at 458. Our high court noted that:

> [T]he automobile exception to the warrant requirement allows an officer to search a vehicle and seize contraband when probable cause exists. The fact that the vehicle was stuck in mud does not render the exception inapplicable. The searching officer testified that it was apparent that someone had been in the process of trying to remove the vehicle from the mud. The truck was parked in an open field and was vulnerable to any person who chose to enter it and remove possible evidence. Under these circumstances, the seizure of the adhesive square was proper.

*Id.* at 458 (citation omitted).

 The record shows that police officers were lawfully present in a place open to the public when on Defendant's driveway at her home and the evidence connected to the crime, the van, was in plain view.[8]

---

8. We observe that the "[t]he plain-view exception to the warrant requirement expresses the Fourth Amendment's conviction that a person's reasonable expectation of privacy diminishes as to items that are readily visible in an otherwise private location into which police are invited or a public location to which all have access." *State v. Johnston,* 957 S.W.2d 734, 742 (Mo. banc 1997), *cert. denied,* 522 U.S. 1150, 118 S.Ct. 1171, 140 L.Ed.2d 181 (1998); *see State v. Kriley,* 976 S.W.2d 16, 19 (Mo.App.1998). Under the plain-view exception, "an officer who is lawfully located in a place from which the object can plainly be seen may seize the object so long as there is probable cause to believe that the object is connected with the crime." *Johnston,* 957 S.W.2d at 742; *see also Arizona v. Hicks,* 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347, 354 (1987); *Rowland,* 73 S.W.3d at 824.

We also find that the paint chips, the Bondo, and the vehicle were properly seized under the automobile exception to the warrant requirement. *Id.* Point I is denied.

In her second claim of trial court error, Defendant contends the trial court improperly admitted testimony provided at a preliminary hearing by Mr. Cook, a witness who identified Defendant as the driver of the van at the time that Defendant had testified she was not operating her vehicle. Defendant argues that the trial court's receipt and admission of this testimony into evidence violated her right to confront the witness, now deceased, because she was unable to effectively cross-examine him regarding inconsistencies in statements made to the police and during the preliminary hearing itself. We disagree.

■■■■■ The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witness against him...." U.S. CONST. amend. VI. This right of confrontation is essential and a fundamental requirement for a fair trial. *State v. Sanders,* 903 S.W.2d 234, 237 (Mo. App.1995); *see also State v. Glaese,* 956 S.W.2d 926, 933 (Mo.App.1997). However, an exception to this right exists where a witness is unavailable at trial but has given testimony at a previous judicial proceeding against the same defendant, and the witness was subject to cross-examination by the defendant at that proceeding. *Sanders,* 903 S.W.2d at 237; *see also State v.*

*Kee,* 956 S.W.2d 298, 302 (Mo.App.1997). In such instances, witness testimony given at the preliminary examination is competent at trial and satisfies the requirements of the confrontation clause of the Sixth Amendment. *State v. Neely,* 979 S.W.2d 552, 556 (Mo.App.1998).

■■■■■ The record reveals that Mr. Cook participated in a preliminary hearing and provided testimony which placed Defendant, his "next-door neighbor," as the driver of the van that pulled into his driveway the night Ms. Cory was killed. Defendant's counsel participated in this proceeding and cross-examined Mr. Cook regarding his observations. The record also reveals that at the time of Defendant's trial, the witness was unavailable to personally testify because of his death.[9] As indicated, *supra,* we have recognized that testimony is competent and properly admissible in such instances.

Although Defendant recognizes this exception to the Confrontation Clause, Defendant, nonetheless, claims she was denied the right to *effectively* cross-examine the witness, especially with regard to what she terms inconsistencies in his statements. Specifically, Defendant contends that in the initial statement provided to the police, Mr. Cook did not identify her as the driver who pulled into his driveway. Also, she asserts that Mr. Cook estimated that the van arrived at approximately 9:30 p.m.[10] However, at the preliminary hearing Mr. Cook identified Defendant as the driver and placed the time of the van's arrival shortly after 9 p.m. Defendant claims that she was denied due process since she was

9. A witness who has died between the preliminary examination and the trial is deemed "unavailable." *See Neely,* 979 S.W.2d at 557.

10. Officer Bryan Crumm testified that he spoke with the witness about the incident on November 1, 2000. At that time, the witness provided a written statement in which he indicated that the van pulled into his driveway at approximately 9:30 p.m. The written statement did not specifically name Defendant as the driver, but Crumm testified that the witness instead referred to her as his neighbor.

unable to confront and cross-examine the witness about these inconsistencies.

However, we note that Defendant had knowledge of these inconsistencies prior to the preliminary hearing and had the opportunity to cross-examine Mr. Cook about his inconsistent statements. In fact, the record indicates that Defendant did inquire about the circumstances and approximate time Mr. Cook claimed to see Defendant. That Defendant failed to inquire further about these inconsistencies does not render Mr. Cook's statements as inadmissible. *See Neely*, 979 S.W.2d at 556 (recognizing that a Defendant's inability to conduct the same cross-examination early in the pretrial process as would be conducted during trial does not mean that the testimony lacks sufficient reliability to admit it for trial).

"Questions concerning the admissibility of evidence are solely within the discretion of the trial court and will not be overturned on appeal absent an abuse of discretion and a showing of prejudice." *Sanders*, 903 S.W.2d at 237. We find no showing of unfair prejudice to Defendant resulting from the admission of Mr. Cook's preliminary hearing testimony at trial, and determine the trial court did not abuse its discretion by its actions in this regard. Point II is denied.

The judgment is affirmed.